**SO ORDERED.**

**SIGNED this 28th day of May, 2015.**



Janice Miller Karlin
United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:  
Jason Daniel Brines  
Wendy Lynn Brines,

        **Debtors.**

Case No. 14-40442  
Chapter 13

### Order Denying in Part and Granting in Part Intrust Bank's Motion for Relief from the Automatic Stay

Creditor INTRUST Bank, N.A. (hereinafter "Intrust Bank") seeks relief from the automatic stay to pursue myriad business property securing a note executed by the corporation Mobile Gameden, Inc. (hereinafter "Mobile Gameden"), a corporation wholly owned by Debtors Jason and Wendy Brines. As collateral for the note, Mobile Gameden gave Intrust Bank a security interest in certain business property, and as further security for repayment of the corporate loan, Debtors gave Intrust Bank a second mortgage on their home. Intrust Bank originally sought stay relief to proceed against Debtors' home, but its brief in support of its motion now abandons that portion of its

motion. As a result, stay relief against Debtors' real property is denied.

Because the Court concludes, however, that the codebtor stay under 11 U.S.C. § 1301[1] does not apply to Mobile Gameden and the business property securing the Intrust Bank note, the Court grants Intrust Bank's motion to proceed against that business property, if state law so allows.

I.  **Background and Procedural History**

Debtors and Intrust have stipulated to the facts,[2] which are highly summarized here. Debtors filed a Chapter 13 bankruptcy petition in April 2014 and their proposed chapter 13 plan,[3] amended twice,[4] remains unconfirmed. Although Debtors' second amended plan acknowledges a debt of $55,000 to Intrust Bank, and Intrust filed a claim for $49,549, the parties agree that only $42,696.99 is now owed, that payments Mobile Gameden owes to Intrust are current, and that Debtors' last plan requires them to directly make the ongoing monthly $1,260 payment on the note.

In March 2015, with Debtors' second amended plan still unconfirmed, Intrust Bank filed a motion for relief from stay because Mobile Gameden was then delinquent. Intrust sought an order terminating the stay to permit it to enforce its remedies in state

---

[1] All future statutory references are to Title 11 of the United States Code, unless otherwise specified.

[2] Doc. 76.

[3] Doc. 3.

[4] Doc. 31.

court against certain business property and Debtors' residence.[5]

Debtors incorporated Mobile Gameden and are the corporation's sole shareholders. Shortly after incorporation, Mobile Gameden executed a note in favor of Intrust Bank, and gave Intrust Bank a security interest in miscellaneous assets of the company, including a 1997 Beck 38' Gooseneck trailer and all accounts, contract rights, inventory, equipment, machinery, furnishings, furniture, chattel paper, instruments, general intangibles, and rights of payment of Mobile Gameden. On November 30, 2012, Mobile Gameden refinanced the note with Intrust Bank and gave Intrust Bank a further security interest in a 1993 Ford Econoline E351 and an assortment of games (Zorba Balls, Laser Tag, Archery Tag, and Mighty Wraps). This collateral will collectively be referred to as the "business property." When the note was refinanced, Debtors also personally gave Intrust Bank a second mortgage on their residential property, located in Benton, Kansas.

The parties agree the business property is worth approximately $28,000, and that there is $55,000 equity in Debtors' home. Accordingly, there is $83,000 worth of collateral securing a debt of approximately half that amount.

Intrust Bank's motion for relief from stay sought relief under §362(d) without identifying the applicable subsection, although the motion argued that Intrust Bank was not adequately protected because of the declining value of the business property and that its position with respect to the real property may be impacted by the large first

---

[5] Doc. 66.

mortgage held by Quicken Loans. Intrust Bank then argued that cause existed to lift the automatic stay so that it could "realize its *in rem* interest" in both the business property and real property.

At the first hearing on Intrust Bank's motion, and in subsequent briefing, the focus of the requested relief changed. Intrust Bank now withdraws that portion of its motion for stay relief as to Debtors' real property. As to the business property, however, Intrust Bank argues that because the debt owed by Mobile Gameden is not a "consumer debt" owed by an "individual," § 1301 of the Bankruptcy Code does not apply to grant Mobile Gameden any stay protection at all, and that Intrust should be permitted to proceed against the business property without the need to seek stay relief.

**II.    Analysis**

By its statutory terms, the automatic stay of § 362(a), and by extension the related adequate protection issues of § 362(d), apply only to debtors, property of debtors, and property of the estate.[6] While the scope of the automatic stay in § 362 is broad, its terms do not extend beyond actions "against the debtor or the property of the bankruptcy estate."[7] As a result, the relief sought by Intrust Bank against Mobile

---

[6] *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings against a 'debtor'—the term used by the statute itself."); *In re Cook*, No. 7-04-17704-SA, 2011 WL 3501844, at *5 (Bankr. D.N.M. Aug. 9, 2011) ("[T]he automatic stay does not protect anyone except the debtor or property of the debtor or of the estate.").

[7] *See Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 870 (10th Cir. 2011), overruled on other grounds by *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) (noting that § 362's automatic stay protects debtors and a debtor's assets); *see also Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("It is

-4-

Case 14-40442    Doc# 83    Filed 05/28/15    Page 4 of 11

Gameden, who is not a debtor in this case, is not governed by § 362.

In addition, the fact that Debtors are the sole owners of the corporate entity—Mobile Gameden—does not bring the collateral and assets of Mobile Gameden within Debtors' bankruptcy estate. Even when a debtor owns one hundred percent of the stock of a corporation, "the property interest of the debtor's bankruptcy estate extends only to the intangible personal property rights represented by the stock certificates."[8] The property of the business entity is not the property of the individuals who own shares in that entity.[9]

As § 362 does not apply to Intrust Bank's request to proceed against Mobile Gameden's business property, the Court next turns to the codebtor stay of § 1301. Section 1301 governs the stay of actions against a codebtor, and states, in pertinent part:

> (a) . . . [A] creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless– –
> (1) such individual became liable on or secured such debt in the

---

well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.").

[8] *Peoples Bankshares, Ltd. v. Dep't of Banking (In re Peoples Bankshares, Ltd.)*, 68 B.R. 536, 539 (Bankr. N.D. Iowa 1986). *See also Donarumo v. Furlong (In re Furlong)*, 660 F.3d 81, 89, 89 n.9 (1st Cir. 2011) (calling it "well-settled" that the automatic stay does not extend to the "assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock" (internal citation omitted)).

[9] *See In re Rodio*, 257 B.R. 699, 701 (Bankr. D. Conn. 2001) (applying concept to an LLC); *In re Calhoun*, 312 B.R. 380, 384 (Bankr. N.D. Iowa 2004) (same; "The separate legal existence of a corporation is respected in bankruptcy. The automatic stay does not stay actions against separate entities associated with the debtor.").

>ordinary course of such individual's business; or
>(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

. . .

Intrust Bank argues that the codebtor stay of § 1301 applies only to individuals, and not to Mobile Gameden, the corporation of which Debtors are the sole shareholders. Intrust Bank also argues that the codebtor stay of § 1301 applies only to holders of consumer debt, and that, because here the codebtor Mobile Gameden is liable as a business debtor, § 1301 again does not apply to provide a codebtor stay.

First, the Court addresses the applicability of § 1301 to the business Mobile Gameden (who the parties agree is a corporate entity)—an argument not squarely addressed by Debtors. The term "individual" as it is used in § 1301 is not defined by the Bankruptcy Code, and there are few cases that have needed to elaborate on the commonly understood definition.[10]

The Court can locate only one case addressing whether § 1301 is applicable to a business entity, rather than to an "individual," as that term is commonly understood. In *In re McCormick*,[11] the Chapter 13 debtor sought extension of the bankruptcy stay in § 362(a) to protect his wholly owned limited liability company ("LLC").[12] The debtor was the sole member of the LLC, and judgments had been issued against both the

---

[10] The common definition for "individual" is "a single human," or "a person." *The American Heritage Dictionary of English Language*, 893 (4th ed. 2006).

[11] 381 B.R. 594 (Bankr. S.D.N.Y. 2008).

[12] *Id.* at 596.

-6-

debtor and the LLC.[13] With little discussion, the bankruptcy court in *McCormick* concluded that § 1301 did not apply to the LLC, as the LLC was not an individual with consumer debt.[14] Ultimately, the bankruptcy court refused to extend the codebtor stay of § 1301 to the debtor's non-filing LLC because the company was not an individual entitled to § 1301 protection.[15] The bankruptcy court reasoned that the extension of the automatic stay for individuals with consumer debts is a "limited extension"—so limited by its very terms.[16]

Debtors admit that Mobile Gameden is a corporation and that the corporation is the sole owner of all the business collateral of which Intrust Bank seeks stay relief. Because it is clear that Mobile Gameden is <u>not</u> an individual, as that term is used in § 1301, like the LLC in *McCormick*, the limited stay provided to codebtors in § 1301 simply does not apply to this corporate business entity. In addition, although the Bankruptcy Code does not define "individual," it does define "person" in § 101(41) as including an "individual, partnership, and corporation." This provides additional support for the conclusion that Congress intended the word "individual" to not include a corporation.

Even if § 1301 was applicable to the corporate entity, which it is not, the debt for the business property also does not satisfy the second prong that would make § 1301

---

[13] *Id.* at 596–97.

[14] *Id.* at 598.

[15] *Id.*

[16] *Id.*

applicable. The codebtor stay of § 1301 applies only to "consumer debt," which is defined by the Bankruptcy Code as a "debt incurred by an individual primarily for personal, family, or household purpose."[17] The Tenth Circuit has stated a debt is not a "consumer debt" when "it is incurred with a profit motive."[18]

Debtors have stipulated that none of the business property is used primarily for personal, family, or household purposes. Further, the facts show that Mobile Gameden executed a note in favor of Intrust Bank, secured by a significant portion of Mobile Gameden's business property. That note was refinanced in November 2012 into a new note; the new note incorporated the previously given business property as security, added additional business property of Mobile Gameden, and gave Intrust Bank a second mortgage on Debtors' home. It is clear from this time line of events that, although Debtors did give a small second mortgage on their home when Mobile Gameden refinanced its debt in 2012, the "primary" purpose of the debt remained to provide capital to fund the profit-seeking endeavors of Mobile Gameden. Debtors already had a first mortgage on their home, and the second mortgage given to Intrust Bank was purely for the refinance of Mobile Gameden's business debt. As a result, the debt at issue was incurred by and for the business venture, not for Debtors' "personal, family, or household purpose" as required by the Bankruptcy Code's definition of "consumer debt."

Rather than address the above issue head-on, Debtors only marginally address

---

[17] § 101(8).

[18] *Citizens Nat'l Bank v. Burns (In re Burns)*, 894 F.2d 361, 362 (10th Cir. 1990).

these issues by citing cases where a bankruptcy court relies on its equitable powers under § 105(a) to grant injunctive relief prohibiting collection against a Chapter 11 debtor's corporate officers when those collection efforts would impact the Chapter 11 debtor's reorganization.[19] These cases, while recognizing that the automatic stay of § 362 "does not forbid actions against [the bankruptcy estate's] non-debtor principals, partners, officers, employees, co-obligors, guarantors, or sureties," analyze the propriety of granting such stay relief under general injunction standards.[20] Under this analysis, the bankruptcy court must ask whether the debtor will successfully effectuate a plan of reorganization, whether irreparable harm to the debtor will occur if an injunction is not granted, whether injunctive relief will cause substantial harm to the opposing party, and whether the public interest is best served by issuing the injunction.[21]

But these cases arise solely in the Chapter 11 context. The cases themselves recognize the differences between Chapter 11 and Chapter 13: "The legislative history shows that Congress may have considered the issue of a general stay of actions against guarantors in reorganization cases, but apparently rejected such a blanket stay and limited co-debtor stays to chapter 13. *See* 11 U.S.C. § 1301. As enacted, chapter 11

---

[19] *See, e.g.*, *TRS, Inc. v. Peterson Grain & Brokerage Co. (In re TRS, Inc.)*, 76 B.R. 805 (Bankr. D. Kan. 1987); *Mahaffey v. E-C-P of Ariz., Inc.*, 40 B.R. 469 (Bankr. D. Colo. 1984).

[20] *TRS, Inc.*, 76 B.R. at 807–08; *see also Mahaffey*, 40 B.R. at 472 (utilizing same injunction standards in Chapter 11 case; not addressing § 362).

[21] *TRS, Inc.*, at 808–09; *Mahaffey*, 40 B.R. at 472..

contains no specific provision authorizing stays against third parties."[22] Debtors cite no examples,[23] and this Court has found none, where a bankruptcy court extended the automatic stay in the Chapter 13 context to a non-debtor corporation under an injunctive relief theory under § 105(a).[24] Congress already considered codebtor stays in the Chapter 13 context with the enactment of § 1301, and this Court will not use equitable powers to expand that stay.

The majority of Debtors' brief can be described as a policy argument why the Court should not construe the statute as it is written. Debtors, while acknowledging that the Kansas "tools of trade" exemption does not apply to the business property at issue, argue that, similar to that exemption, they should be able to protect the assets that Debtor Jason Brines uses to secure his sole source of income. Debtors claim that allowing Intrust Bank to repossess the Mobile Gameden business property would be devastating to their chance of reorganizing their personal finances, and that "individuals and businesses alike will be less comfortable supporting the endeavors of the other, which ultimately is not a good precedent for the overall economy and small

---

[22] *Id.* at 807.

[23] Debtors cite one Chapter 13 case, *Rupp v. Cloud Nine, Ltd. (In re Cloud Nine, Ltd.)*, 3 B.R. 202 (Bankr. D.N.M. 1980), but all that case concludes is that § 362 stays actions against the debtor, and that actions that do not involve the debtor may proceed in state court. *Id.* at 204. The bankruptcy court noted a stay under § 1301 was not before the court at that time. *Id.* As a result, this case provides no support for Debtors' position here.

[24] *See Saleh v. Bank of Am. (In re Saleh)*, 427 B.R. 415, 422 (Bankr. S.D. Ohio 2010) ("[T]his court has found no examples or support for extending the automatic stay or issuing an injunction in a Chapter 13 case to protect a separate commercial entity like an LLC or a corporation.").

business environment."[25] But the Court can do no more than follow the clear statutory language and case law outlined above. If Congress wished to extend the codebtor stay to the situation at hand, then it would not have used the language it did in § 1301. Debtors chose to operate their business as a corporate entity and enjoyed the benefits the corporate entity provided them; they cannot now avoid the more painful realties of their decision by ignoring the corporate nature of their business.[26]

## III.  Conclusion

Intrust Bank's motion for relief from the automatic stay[27] is denied in part and granted in part. To the extent Intrust Bank's motion seeks stay relief to proceed against Debtors' real property, that portion of the motion is denied. The Court concludes, however, that the codebtor stay of § 1301 is not applicable to Mobile Gameden and the business property securing the Intrust Bank note, and the Court grants that portion of Intrust Bank's motion seeking to proceed against the Mobile Gameden business property.

**It is so Ordered**.

###

---

[25] Doc. 73 at 6.

[26] Although this Court grants relief from stay as to the business collateral, such grant should not be interpreted to suggest that Intrust Bank could succeed were it to proceed against Mobile Gameden in state court, under the terms of the note, at a time when the corporation is totally current on the note and the Bank is protected by collateral it stipulates is worth almost twice the amount of the debt due. That will be an issue for the state court to decide.

[27] Doc. 66.